UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Civil Action No. _____

MICHAEL PARKER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

STONELEDGE FURNITURE, LLC and SOUTHWESTERN FURNITURE OF WISCONSIN, LLC d/b/a ASHLEY FURNITURE,

Defendants.

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

1. Plaintiff Michael Parker ("Mr. Parker," or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action based on the alleged illegal actions of defendants Stoneledge Furniture, LLC and Southwestern Furniture of Wisconsin, LLC d/b/a Ashley Furniture (collectively "Defendants") in negligently, knowingly and/or willfully transmitting unsolicited, autodialed SMS or MMS text messages, *en masse*, to Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*., ("TCPA"), thereby invading Plaintiff's privacy.

2. Upon information and belief, Defendants sent random automated text messages to Plaintiff and others similarly situated without their prior express written consent in order to solicit their business. This is exactly what the TCPA was designed to prevent. *See*, *e.g.*, *Mims v. Arrow Fin Servs., LLC*, 565 U.S. 368, 370-71 (2012) ("Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes— prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.").

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

## NATURE OF THE ACTION

5. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*, ("TCPA"), to address consumer complaints about certain telemarketing practices. The TCPA prohibits, among other things, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing," as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party before initiating such calls or texts using an autodialer or prerecorded voice.

6. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

7. The Federal Trade Commission ("FCC") is charged with the authority to issue regulations implementing the TCPA. According to findings by the FCC, automated calls and text messages are prohibited under the TCPA because receiving them is a greater invasion of privacy and nuisance compared to live solicitation calls. The FCC has also acknowledged that wireless

Class Action Complaint - 2

customers are charged for any incoming calls and text messages.

8. In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

9. The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendants bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message).

10. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones."[1]

11. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. SMS and MMS text messages are received virtually anywhere in the world.

12. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

---

[1] Amanda Lenhart, *Cell Phones and American Adults*, Pew Research Center (Sept. 2, 2010), https://www.pewresearch.org/internet/2010/09/02/cell-phones-and-american-adults/.

13. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law. 47 U.S.C § 227(b).

15. Because Defendants direct and conduct business within the State of Florida and this judicial district, personal jurisdiction is established.

16. Personal jurisdiction and venue are proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Defendants conducted business within this judicial district at all times relevant and (2) Defendants' corporate headquarters is with in this judicial district.

## PARTIES

17. Plaintiff is an individual residing in the County of Los Angeles, State of California, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18. Defendant, Stoneledge Furniture, LLC, is a limited liability company whose state of formation is Wisconsin and principal place of business is in Arcadia, Wisconsin as well as Tampa, Florida.

19. Defendant Stoneledge Furniture, LLC is wholly owned by Ashley Global Retail, LLC. Ashley Global Retail LLC's operations management, human resources, finance, information technology, legal and sales and marketing are managed from the Ashley Global Retail headquarters in Tampa, Florida.

20. Defendant Southwestern Furniture of Wisconsin, LLC, is a limited liability company whose state of formation is Wisconsin and principal place of business is in Arcadia, Wisconsin as well as Tampa, Florida.

21. Defendants are, and at all times mentioned herein were, each a "person" as defined by 47 U.S.C. § 153(39).

22. Defendants are part of a national furniture corporation that sells furniture and other household items to customers online and instore. In 2016, the Ashley Furniture retail operations

facility opened in Tampa, Florida.[2]

23. At all times relevant herein, Defendants conducted business in the State of Florida, in the City of Tampa, and within this judicial district.

## FACTUAL ALLEGATIONS

24. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone ending in "0172." Plaintiff's cellular telephone is, and at all times mentioned herein was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

25. Starting on or about May 15, 2020, Defendants sent multiple marketing text messages to Plaintiff's cellular telephone, from the phone number (747) 223-6341, without Plaintiff's prior express written consent.

26. Many of the text message solicitations sent from (747) 223-6341 to Plaintiff read in part: "30% off store wide . . . .our store is Open for business by appointment ONLY from 11:00am to 7:00pm EVERYDAY."

27. During the month of May 2020, Plaintiff received at least four unsolicited text messages from the (747) 223-6341 number, which each contained a similar advertisement about Defendants' business and product offerings.

28. Specifically, each text message to Plaintiff's cellular telephone included Ashley Furniture's name and logo, and was a solicitation for Defendants' products, which were offered in the text message at a 30% off storewide discount.

29. Plaintiff is not currently a customer of Defendants, nor does Plaintiff recall ever providing Defendants with Plaintiff's cellular telephone number. In addition, Plaintiff never provided Defendants with prior express written consent to receive any automated telephone calls or text messages.

30. Upon information and belief, the (747) 223-6341 telephone number is either owned, operated, and/or maintained by Defendants or on behalf of Defendants.

31. The text messages sent by Defendants to Plaintiff's cellular telephone contained no method for Plaintiff to instruct Defendants to stop sending Plaintiff the unwanted text messages.

32. Because Plaintiff is alerted when a text message is received to Plaintiff's cellular

---

[2] *See* https://www.ashleyfurnitureindustriesinc.com/en/company/history.

device, the unsolicited text messages that Defendants transmitted to Plaintiff's cellular device invaded Plaintiff's privacy, and distracted and aggravated Plaintiff upon receipt.

33. Upon information and belief, Defendants sent or transmitted, or had sent or transmitted on its behalf, the same or substantially similar unsolicited text message *en masse* to thousands of customers' cellular telephones nationwide.

34. Upon information and belief, the automated text messaging system used by Defendants to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

35. Upon information and belief, Defendants utilized an "automated telephone dialing system" because the hardware and software used by Defendants to send such text messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers automatically.

36. The text messages at issue sent by Defendants to Plaintiff's cellular telephone beginning on or around May 15, 2020, constituted an "advertisement" and/ or "telemarketing" as prohibited by the TCPA, as Defendants sent the text messages to Plaintiff in order to advertise its "30% off store wide" promotional discount as well as its store hours, and also because Defendants sent the text message for the purpose of advertising the sale of its products to Plaintiff in the future.

37. Defendants' telephonic communications to Plaintiff were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

38. Plaintiff never provided "prior express written consent' or any other form of consent to Defendants or any affiliate, subsidiary, or agent of Defendants to transmit SMS or MMS text messages to Plaintiff's cellular telephone by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

39. Through Defendants' aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

40. Plaintiff was personally affected by Defendants' aforementioned conduct because Plaintiff was frustrated and distressed that Defendants annoyed Plaintiff with an unwanted marketing text message, without Plaintiff's consent.

41. The text messages from Defendants, or its agent(s), violated 47 U.S.C. § 227(b)(1)(A)(iii).

42. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendants sent such text messages to consumers without their consent, they failed to address or respect the limitations imposed by the TCPA. In doing so, Defendants invade Plaintiff and similarly situated persons' privacy and violate the spirit and intent behind the TCPA.

43. Through the aforementioned conduct, Defendants violated the TCPA, 47 U.S.C. §§ 227, *et seq*.

## STANDING

44. Plaintiff has standing under Article III of the Constitution for Plaintiff's claims because (i) Plaintiff properly alleges injuries in fact, (ii) which are traceable to Defendants' unlawful acts, and (iii) are likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).

### *Injury in Fact*

45. Plaintiff's injury must be sufficiently "concrete" and "particularized" to satisfy the requirements of Article III. *Id.* at 1547.

46. For an injury to be concrete, it must be "*de facto*," that is, it must actually exist. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017). Here, Plaintiff has suffered a concrete injury as Defendants sent multiple unsolicited text message solicitations to Plaintiff's cellular telephone using an ATDS. Those text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

47. An injury is "particularized," if it affects the plaintiff in a personal and individual way. *Spokeo*, 136 S. Ct. at 1548. Here, Plaintiff's injury is particularized as Defendants invaded Plaintiff's privacy by sending multiple unsolicited text message solicitations to his cellular telephone using an ATDS. Plaintiff became distracted, annoyed, and aggravated each time Plaintiff received Defendants' unsolicited text messages. All of these injuries are particularized and specific to Plaintiff, and are the same injuries suffered by each member of the putative Class.

### *Traceable to Defendants*

48. Plaintiff must have suffered an injury in fact that is traceable to Defendants. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

49. Defendants' text messages are directly and explicitly linked to them. The text messages Defendants sent to Plaintiff indicate they were sent from Defendants. Each text message

specifically mentions "Ashley Homestore" which, upon information and belief, is a reference to Defendants. Defendants' text messages are the sole source of Plaintiff's and the Class Members' injuries.

### *Redressable by Judicial Order*

50. Plaintiff must have suffered an injury in fact that is redressable by judicial order. *Id.*

51. Plaintiff's Prayer for Relief includes a request for damages for the text messages Defendants sent, as authorized by statute. *See* 47 U.S.C. § 227(b)(3). These statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and the Class Members.

## CLASS ALLEGATIONS

52. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "Class").

53. Plaintiff represents, and is a member of, the Class, which is defined as follows:

> All persons throughout the United States to whom Defendants and/or their agent(s) sent, or caused to be sent, a text message, directed to a number assigned to a cellular telephone service, utilizing an automatic telephone dialing system, without prior express consent, between May 1, 2017 and September 30, 2020 (the "Settlement Class"). The class period for the Settlement Class will be May 1, 2017 through September 30, 2020.

54. Excluded from the Class are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

55. Plaintiff reserves the right to redefine the Class, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

56. The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendants' records to determine the size of the Class and to determine the identities of individual Class members.

### **Numerosity**

57. The Class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendants sent or transmitted, or had sent

or transmitted on its behalf, unsolicited text messages *en masse* to hundreds of thousands of customers' cellular telephones nationwide during the proposed class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

58. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

   a) Whether within the four years prior to the filing of this Complaint, Defendants or affiliates, subsidiaries, or agents of Defendants transmitted any text messages without the prior express written consent of Plaintiff and Class members using an "automatic telephone dialing system";

   b) Whether Defendants or affiliates, subsidiaries, or agents of Defendants transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

   c) Whether Defendants or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendants obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

   d) Whether Defendants' conduct was knowing and/or willful;

   e) Whether Plaintiff and the members of the Class were damaged thereby, and the extent of damages for such violation; and,

   f) Whether Defendants or affiliates, subsidiaries, or agents of Defendants should be enjoined from engaging in such conduct in the future.

**Typicality**

59. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class members as demonstrated herein.

60. Plaintiff represents and is a Class member of the Class because Plaintiff received at least one marketing text message through the use of an automatic telephone dialing system,

without providing prior express written consent to the Defendants within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of Class members and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members Plaintiff seeks to represent.

61. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' violations or misconduct as alleged herein.

### Adequacy

62. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class member. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class members.

### Predominance

63. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class are capable of proof at trial through evidence that is common to the class rather than individual to its members.

### Superiority

64. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

65. Individualized litigation also would present the potential for varying, inconsistent,

or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous Class members who will be unable to enforce individual claims of this size on their own, and by Defendants' competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

66. The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party Class members to protect their interests.

67. The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendants.

68. Defendants has acted or refused to act in ways generally applicable to the Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class as a whole. Likewise, Defendants' conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

69. The Class may also be certified because:

   (a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants;

   (b) The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

   (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the

members of the Class as a whole.

70. This suit seeks statutory damages on behalf of Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

## COUNT I

### NEGLIGENT VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227, *ET SEQ.*

71. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

72. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*.

73. As a result of Defendants' negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, an award of $500.00 statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

## COUNT II

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227, *ET SEQ.*

74. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

75. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

76. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and all Class members are entitled to, and do seek, an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief and judgment against Defendants:

- An Order certifying this action to be as a Class Action pursuant to Federal Rule of Civil Procedure 23, establishing the defined Class and any Subclasses the Court deems appropriate, appointing Plaintiff is a proper representative of the Class, and appointing the law firms representing Plaintiff as Class Counsel;
- An Order declaring Defendants' conduct, as alleged above, was in violation of the TCPA;
- An award of $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendants, pursuant to 47 U.S.C. § 227(b)(3)(B);
- An award of $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendants, pursuant to 47 U.S.C. § 227(b)(3)(B);
- Post-judgment interest as allowed by applicable law; and
- Any other further relief that the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America and Federal Rule of Civil Procedure 38(b), Plaintiff is entitled to, and demands, a trial by jury on all claims so triable.

Respectfully Submitted

By: /s/ Matthew A. Goldberger

**MATTHEW A. GOLDBERGER, P.A.**
Matthew A. Goldberger, Esq.
Florida Bar No. 119897
matthew@goldbergerfirm.com
1555 Palm Beach Lakes Blvd.
Suite 1400
West Palm Beach, FL 33401
Telephone: (561) 659-8337
Facsimile: (561) 284-8938

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (*pro hac vice forthcoming*)
ak@kazlg.com
Mona Amini, Esq. (*pro hac vice forthcoming*)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KJC LAW GROUP, A.P.C**
Kevin Cole (*pro hac vice forthcoming*)
kevin@kjclawgroup.com
9701 Wilshire Blvd, Ste 1000,
Beverly Hills, CA 90212-2010
Telephone: (310) 861-7797
Facsimile: (818) 994-9200

**Dated:**          **March 26, 2021**