| | |
|---|---|
| MICHAEL PARKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STONELEDGE FURNITURE, LLC and SOUTHWESTERN FURNITURE OF WISCONSIN, LLC d/b/a ASHLEY FURNITURE,<br><br>Defendants. | Case No. 8:21-cv-00740-CEH-AEP |

## **UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS**

## **SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

Plaintiff Michael Parker ("Plaintiff"), on behalf of himself and a class of similarly situated persons, respectfully moves for an order granting preliminary approval of the class action settlement with Defendants Stoneledge Furniture, LLC and Southwestern Furniture of Wisconsin, LLC d/b/a Ashley Furniture (collectively "Defendants" or "Ashley Furniture") as set forth in the parties' Settlement Agreement ("Settlement Agreement," "Agreement," or "Agr."), certifying a class for settlement purposes only, and providing for issuance of Notice to the proposed Settlement Class.[1]

---

[1] The Settlement Agreement is attached as **Exhibit 1**. All capitalized terms used herein have the same definitions as those defined in the Agreement.

## I.    **INTRODUCTION**

The Settlement Agreement makes available to each member of the Settlement Class a Cash Settlement Payment of $10 cash for the first marketing text message received from Defendants without prior express consent and $7 for the second such text message received from Defendants; or, alternatively, a Voucher Award of $25 voucher for the first such text message received from Defendants and a $15 voucher for the second such text message from Defendants. Agr. § III.5. The Voucher Award shall only be redeemable for purchases on the www.ashleyfurniture.com website (subject to certain additional limitations on the types of transactions in which Voucher Awards may be used as further described in the Settlement Agreement), will expire no earlier than eighteen (18) months after they are issued to the Settlement Class Members and shall be freely transferable. *Id*. If approved, the Settlement will bring an end to what likely would be lengthy and contentious litigation centered on unsettled legal questions.

This motion seeks the entry of an order providing for, among other things:

1.  Preliminary Approval of the Settlement;

2.  Preliminary certification of a Settlement Class and appointment of the Plaintiff as Class Representatives and Plaintiff's counsel as Class Counsel;

3.  Approval of the Claims Administrator;

4.  Approval of the Notice to Settlement Class Members describing:

a.  The Settlement and the Settlement Class members' rights with respect to the Settlement;

b.  The procedure for submitting a Claim Form for either a Cash Settlement Award or Voucher Award;

c.  The procedure for opting-out of or objecting to the Settlement.

d.  The proposed Release of claims;

e.  Class Counsel's request for attorneys' fees and expenses;

5.  Approval of the Claims process; and,

6.  The scheduling of a Final Approval Hearing.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Abbas Kazerounian ("Kazerounian Decl.") ¶ 3, attached hereto as **Exhibit 2**. First, the Settlement was reached only after first engaging in extensive arm's-length negotiation with the assistance of well-respected mediator Bruce Friedman through JAMS, and the exchange of informal and confirmatory discovery. Second, the amount of attorneys' fees for Class Counsel was not discussed by the parties until an agreement was reached regarding the material terms of the Settlement, which speaks to the fundamental fairness of the process. Kazerounian Decl. ¶ 4. Third, The Claims Process is straightforward and easy to understand for the proposed Settlement Class. The Settlement Class members will be receiving direct notice via e-mail, or U.S. mail for those unsuccessfully delivered by e-mail (with notice also provided via a settlement website for any Settlement Class members as to whom Defendants or the

Claims Administrator cannot determine current email or U.S. mail addresses), and the Notice has been designed so that Settlement Class Members can easily submit their claim to their desired award from the Settlement. Kazerounian Decl. ¶ 5. Fourth, the Settlement provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendants' ability and willingness to engage in vigorous defense of the case. Kazerounian Decl. ¶ 6. Fifth, A preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness and Preliminary Approval is appropriate. Kazerounian Decl. ¶ 7.

For all of these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    BACKGROUND

The Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls...." [2] Defendants initiated a text message campaign in which approximately 545,050 allegedly violative text messages were sent to approximately 417,989 unique cell phone numbers. Plaintiff alleges this campaign violated the TCPA because the messages were sent to consumers using an automatic telephone dialing system without prior express written consent.  Defendants deny any wrongdoing.

---

[2]  Federal Communications Commission, Small Entity Compliance Guide (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

## III. SUMMARY OF THE SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement.

### a. The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

> **All persons throughout the United States to whom Defendants and/or their agent(s) sent, or caused to be sent, a text message, directed to a number assigned to a cellular telephone service, utilizing an automatic telephone dialing system, without prior express consent during the Class Period, between May 1, 2017 and September 30, 2020 (the "Settlement Class").**

Excluded from the Settlement Class are: (1) all persons to whom Defendants and/or their agent(s) sent, or caused to be sent, a text message, directed to a number assigned to a cellular telephone service, utilizing an automatic telephone dialing system, purely to consummate a purchase transaction, such as text messages solely sent to set up time for delivery of a purchase; and (2) Defendants and any parent, subsidiary, affiliate or controlled person of Defendants, as well as the officers, directors, agents, servants or employees of Defendants, or any parent, subsidiary or affiliate of Defendants, and the immediate family members of all such persons.

### b. The Settlement Awards to Settlement Class Members

Pursuant to the Settlement, Defendant has agreed to make available to each Settlement Class member either a Cash Settlement Payment of $10 cash for the first allegedly violative text message received from Defendants and $7 for the second such text message received from Defendants (a "Cash Settlement Award"); or, alternatively, a Voucher Award of $25 voucher for the first such text message and a

$15 voucher for the second such text message from Defendants (a "Voucher Award"). The Voucher Awards will be redeemable for purchases on the www.ashleyfurniture.com website and subject to additional terms and conditions on the use thereof as described in the Settlement Agreement. *See* Agr. § III.5.

### c. **The Notice Program**

Pending this Court's approval, Kurtzman Carson Consultants LLC ("KCC"), will serve as the Claims Administrator, and will be responsible for administrating the Notice to the Settlement Class Members informing them of the proposed Settlement and their ability to submit Claim Forms seeking Cash Settlement Payment or Voucher Awards. Agr. § III.9.a. The Notice Program consists of: (1) E-Mail Notice; (2) a Summary Notice; (3) the Settlement Website; and (4) a toll-free number with interactive Voice Response. *Id.* The forms of the proposed notices agreed upon by Class Counsel and Defendants, subject to this Court's approval and/or modification, are attached to as Exhibits C-1 and C-2 to the Settlement Agreement.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement; and other important documents.

### i. E-Mail Notice

The primary form of Notice shall be E-Mail Notice. Agr. § III.9.a. A copy of the proposed E-Mail Notice is attached to the Settlement Agreement as Exhibit C-1. Individuals who receive E-Mail Notice will have the option of mailing in the Claim Form or visiting the Settlement Website to access and submit a Claim Form. *Id.*; Agr. § III.7.

E-Mail Notice will be completed no later than thirty (30) days after entry of the Preliminary Approval Order, and Claim Forms must be submitted electronically online or post-marked no later than ninety (90) days after the Courts entry of the Preliminary Approval Order.

### ii. Mail Notice

The Claims Administrator shall use Mail Notice for any Settlement Class Members from whom E-mail Notices were returned as undeliverable for whom Defendants have mailing addresses or the Claims Administrator can obtain mailing addresses through "reverse lookup" sources, including the U.S. Postal Service's national change of address database. Agr. § III.9.a. A copy of the proposed Mail Notice is attached to the Settlement Agreement as Exhibit C-1

### iii. Settlement Website & Toll-Free Telephone Number

The Claims Administrator will establish a Settlement Website which will permit Settlement Class Members to access and view information and pertinent papers relating to the Settlement, including the form of Notice attached as Exhibit C-2, and submit Claim Forms. Agr. § II.T, § III.9.c. The Claims Administrator will also

establish a toll-free telephone number with Interactive Voice Response for Settlement Class members to call with Settlement-related inquiries. Agr. § III.9.c.

### d.  Claims Process

The Claims Process and Claim Form are straightforward, easy to understand for Settlement Class Members, and designed so that they can easily submit their claim for their Settlement Award. Kazerounian Decl. ¶ 5; Agr. § III.7.  Settlement Class members will make a claim by submitting a valid Claim Form to the Claims Administrator either by U.S. Mail or electronically via the Settlement Website. *Id.* A copy of the Claim Form is attached to the Settlement Agreement as Exhibit B.

Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members: (i) that the Class Claimant did not provide consent to Defendants to receive text messages; (ii) the number of text messages received from Defendants without consent and the identity of the cell phone number receiving such text(s); (iii) that the text message did not serve purely to consummate a purchase transaction (such as a text sent solely to set up a delivery time) and (iv) whether the Settlement Class Members elects to receive settlement compensation in the form of a Cash Settlement Payment or a Voucher Award, per Agr. § III.5 (*e.g.*, a Cash Settlement Payment of $10 for a Settlement Class Member who received one eligible text or $17 for a Settlement Class Member who received multiple eligible texts; and a Voucher Award of either $25 or $40, depending on the number of eligible texts). Agr. § III.7; Exhibit C.

Any member of the Settlement Class who does not submit a Claim Form within the Claim Period, as evidenced by postmark or qualifying submission via the Settlement Website, shall not receive any Cash Settlement Payment or Voucher Award from Defendants. The Claims Due Date which Claim Forms must be post-marked or timely electronically submitted online via the Settlement Website shall be set by the Court as on or before ninety (90) days after the Court's entry of the Preliminary Approval Order. Agr. § II.B, III.7.

**e. Settlement Administrator**

Pending this Court's approval, Kurtzman Carson Consultants LLC ("KCC") shall serve as the Claims Administrator. The Claims Administrator's responsibilities may include (but are not necessarily limited to):

     i. obtaining from Defendants and/or Class Counsel the names, email and/or U.S. mail address information, and cellular telephone numbers for Settlement Class members;

     ii. providing Notice to Settlement Class Members within thirty (30) days after the entry of the Preliminary Approval Order initially via email in substantially the same form as that attached as Exhibit C-1; and, in the event that any email Notices bounce-back or are otherwise unsuccessfully delivered to a class member, a summary Notice will be sent via U.S. mail in substantially the same form as that attached as Exhibit C-1 to identifiable Settlement Class Members for whom Defendants have mailing addresses or the Claims Administrator can

obtain mailing addresses through commercially or publicly available
"reverse lookup" sources and/or the U.S. Postal Service national
change of address database.

iii. establishing and maintaining the Settlement website including the
Notice in the form attached as Exhibit C-2;

iv. establishing and maintaining a post office box for submissions of Claim
Forms, requests for exclusion, or objections, from the Settlement Class;

v. receiving, evaluating, and processing Settlement Class members' Claim
Forms;

vi. establishing and maintaining an automated and toll-free telephone line
for Settlement Class members to call with Settlement-related inquiries;

vii. responding to any Settlement Class member inquiries;

viii. processing all requests for exclusion from the Settlement Class;

ix. providing weekly reports about the Notice plan and number and any of
opt-outs to Class Counsel and Defendants' counsel;

x. providing Class Counsel with confirmation within forty-five (45) days
following the Effective Date, as defined in Section III.11 herein, that all
claimed Cash Settlement Payment(s) and/or Voucher Award(s) have
been issued.

xi. distributing Cash Settlement Payments and/or Voucher Awards to the
Settlement Class Members who submit a Claim Form and who meet
the criteria established Agr. § III.6.

### f. **Opt-Out and Objection Procedures**

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Claims Administrator at the addresses designated in the Notice. Agr. § III.10 and Exhibit C. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendants, subject to any defenses that Defendants may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. A Settlement Class member must opt-out of the Settlement Class on or before the 90th day after the date of entry of the Preliminary Approval Order. *Id.* § III.10. The Settling Parties agree that, subject to Court approval, any Settlement Class Member who does not file a timely written request for exclusion from the Settlement Class shall be bound by the terms of this Agreement, including specifically, but not limited to, the Releases set forth in Agr. § III.12

Settlement Class Members who wish to file an objection to the Settlement must do so on or before the ninetieth (90th) day after the date of entry of the Preliminary Approval Order. *Id.* § III.10. Pending Court approval, for an objection to be considered by the Court, it must include the following:

a. the objector's full name, address, telephone number on which he/she/it received the text message(s) from Defendants or claim identification number included in the Notice;

b. state in writing all objections, and the reasons for such objections;

c.  If the objector wishes to appear in person to present evidence or argument in support of the objection at the Final Approval Hearing, they must provide notice to that effect in their notice of objection.

A Settlement Class Member or his/her/its attorney intending to make an appearance at the Final Approval Hearing must: (a) file a notice of appearance with the Court no later than ten (10) days prior to the Final Approval Hearing, or as the Court may otherwise direct; and (b) serve a copy of such notice of appearance on all counsel for all Settling Parties. For any attorney representing an objector, the attorney shall file a declaration listing all objections previously filed for anyone, the case name, court, and case number, and how much, if any amount, was paid in connection with the objection. Agr. § III.10 The Settling Parties agree that, subject to Court approval, any Settlement Class Member who does not file a timely written objection to the settlement shall be foreclosed from seeking review of the settlement by appeal or otherwise. *Id.*

### g.  Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class, have agreed to the release as defined in the Agreement. Agr. § III.12.

### h.  Class Counsel Fees and Expenses

Defendants have agreed not to oppose Class Counsel's request for attorneys' fees and expenses of up to $400,000. Agr. § III.14.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### a.    The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).  As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007).  Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citations omitted). In the second step, after notice to settlement class members and time and opportunity for

them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id.*

The standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 at 62, 64-65 (1982)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

The Court should take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is squarely within the range of reasonableness and satisfies all standards for Preliminary Approval.

**b.  The Settlement Satisfies the Criteria for Preliminary Approval**

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good faith, informed and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate.  Kazerounian Decl. ¶ 7.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  Plaintiff and Class Counsel believe that the claims asserted are meritorious and Plaintiff would prevail if this matter proceeded to trial. Defendants deny any liability and have shown a willingness to litigate vigorously in defense of the case.  Kazerounian Decl. ¶ 6.

The Parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time and expenses associated with completing trial and any appellate review. Kazerounian Decl. ¶ 8.

**c.  The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion

between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[3] *see also*

*Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005)

(approving class settlement where the "benefits conferred upon the Class are

substantial, and are the result of informed, arms-length negotiations by experienced

Class Counsel").

The Settlement here is the result of extensive, arm's-length negotiations between

experienced attorneys who are familiar with class action litigation and with the legal

and factual issues of this Action. Kazerounian Decl. ¶ 9. Furthermore, Class Counsel

are particularly experienced in the litigation, certification, trial, and settlement of

nationwide class actions. *Id.* ¶¶ 10, 15-80. Class Counsel zealously represented their

clients throughout the litigation, and throughout the discovery process, which

included review of numerous pages of documents and electronic data and researching

and analyzing legal precedent pertaining to the Defendants' arguments. *Id.* ¶ 11.

In negotiating this Settlement, Class Counsel had the benefit of years of

experience in litigating and settling complex class actions and a familiarity with the

facts of this action. *Id.* ¶ 9. As stated above, Class Counsel conducted a thorough

analysis of Plaintiff's claims and engaged in informal and confirmatory discovery with

Defendants. *Id.* ¶ 11. Class Counsel's review of that discovery enabled them to gain an

understanding of the evidence related to central questions in the Action, and prepared

them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty*

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh
Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

*Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted Rule 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### d. The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

### i. Likelihood of Success at Trial

Class Counsel are confident in the strength of Plaintiff's case but are also pragmatic in their awareness of the various defenses available to Defendants and Defendants' financial resources, and the risks inherent in trial and post-judgment appeal. Kazerounian Decl. ¶ 12. The success of Plaintiff's claims turn on questions that would arise at summary judgment, trial and during an inevitable post-judgment appeal. Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks and unpredictable path of continued litigation absent a settlement. *Id.* ¶ 13.

Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members, in a prompt and efficient manner without further delay. *Id.* ¶ 14. Plaintiff's Counsel

carefully analyzed the settlement in light of the parties' respective positions and determined that the immediate, certain, and substantial payment and remedial measures offered by Defendants to resolve this matter are fair, reasonable, and adequate relief to the Class. *Id.* ¶ 83.

### ii. <u>Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair</u>

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The Settlement benefits made available to the Settlement Class here are more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, a motion for class certification, Defendants' assertion of various legal challenges, a motion for summary judgment, trial as well as appellate review following a final judgment.

There can be no doubt that this Settlement is a fair and reasonable recovery for the in light of Defendants' defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement. Kazerounian Decl. ¶ 13.

### iii. Complexity, Expense and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Kazerounian Decl. ¶ 14.

### iv. Stage of Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiff had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

The Settlement was reached after preliminary discovery, including the production and review of informally provided information and formal documents and electronic data produced by Defendants, confirmatory discovery in the form of a deposition of Defendants' Rule 30(b)(6) representative, as well as information shared in mediation with well-respected neutral, Bruce Friedman of JAMS. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and

weaknesses of Plaintiff's claims and prospects for success in litigating this action. Kazerounian Decl. ¶ 4.

### e. Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in the Agreement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class

action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of the owners of approximately 417,989 unique cell phone numbers (Agr. at p. 2) and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendants' text messaging – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and

are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").  Plaintiff is typical of absent Settlement Class members because Plaintiff received the subject text messages and claim to have suffered the same injuries, and because they will all receive the same benefits from the relief provided by the Settlement.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are typical of and coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no known diverging interests. Declaration of Plaintiff Michael Parker ("Parker Decl.") ¶ 7; Kazerounian Decl. ¶ 4.  Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Parker Decl. ¶ 8; Kazerounian Decl. ¶¶ 10, 15-80.

Class Counsel devoted substantial time and resources to vigorous litigation of this action. Kazerounian Decl. ¶ 81.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### f.  The Court Should Approve the Proposed Notice Program

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims

be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice program satisfies all of these criteria. Agr. § III.9.a-d; Exhibit C. As recited in the Settlement and above, the Notice will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for submitting a Claim Form for Cash Settlement Payment or Voucher Awards, for objecting to the Settlement or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice program is designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process. Further, the parties agree that the notice procedure complies with statutory and constitutional requirements as the best and most practicable notice under the circumstances in this matter. Agr. § III.9.d. Therefore, the Court should approve the Notice and the form and content of the Notice.

## V.    CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices and Claim Form,

attached to the Settlement Agreement; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiff as Class Representative; (6) appoint as Class Counsel the law firms and attorneys listed in the Agreement; and (7) schedule a Final Approval Hearing.

## Local Rule 3.01(g) Certification

Plaintiff has conferred with Defendants, this motion is unopposed by Defendants, and the parties agree on the resolution of this motion in its entirety.

Respectfully submitted,

Date: February 1, 2022

By: s/ Abbas Kazerounian
Abbas Kazerounian (*pro hac vice*)
ak@kazlg.com
Mona Amini (*pro hac vice*)
mona@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Kevin Cole (*pro hac vice*)
kevin@kjclawgroup.com
**KJC LAW GROUP, A.P.C**
9701 Wilshire Blvd, Ste 1000,
Beverly Hills, CA 90212-2010
Telephone: (310) 861-7797
Facsimile:  (818) 994-9200

Matthew A. Goldberger
Florida Bar No. 119897
matthew@goldbergerfirm.com
**MATTHEW A. GOLDBERGER, P.A.**
1555 Palm Beach Lakes Blvd., Suite 1400
West Palm Beach, FL 33401
Telephone: (561) 659-8337
Facsimile: (561) 284-8938

*Attorneys for Plaintiff and the putative class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 1, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: s/ *Mona Amini*

Mona Amini (*pro hac vice*)
mona@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523