# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL PARKER, individually and on behalf of all others similarly situated, | Case No. 8:21-cv-00740-CEH-AEP |
| Plaintiff, | |
| v. | |
| STONELEDGE FURNITURE, LLC and SOUTHWESTERN FURNITURE OF WISCONSIN, LLC d/b/a ASHLEY FURNITURE, | |
| Defendants. | |

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES

## I.    INTRODUCTION

Plaintiff Michael Parker ("Plaintiff"), on behalf of himself and the Settlement Class, respectfully moves for an order granting final approval of the class action settlement with Defendants Stoneledge Furniture, LLC and Southwestern Furniture of Wisconsin, LLC d/b/a Ashley Furniture ("Defendants" or "Ashley Furniture") as set forth in the parties' Settlement Agreement ("Settlement Agreement," "Agreement," or "Agr."). On February 17, 2022, the Court granted Preliminary Approval of the Settlement, approving the Notice program, directing the Claims Administrator to disseminate Notice to the Class, establishing the deadlines for claims, the filing of Motion for Final Approval of the Settlement, and setting the Final Fairness Hearing for June 17, 2022, at 11:00 a.m., before Hon. Charlene Edwards Honeywell.

## II.    SUMMARY OF THE SETTLEMENT TERMS

Plaintiff initiated this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA"), based on the claim that Defendants initiated a text message campaign where approximately 545,050 text message solicitations were sent to approximately 417,989 unique cell phone numbers using an automatic telephone dialing system without prior express consent. After engaging in arm's length negotiations with the assistance of respected mediator, Bruce Friedman of JAMS, the parties arrived at the Settlement on behalf of Plaintiff and Settlement Class. The following is a summary of the material terms of the Settlement.

### A. The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

> **All persons throughout the United States to whom Defendants and/or their agent(s) sent, or caused to be sent, a text message, directed to a number assigned to a cellular telephone service, utilizing an automatic telephone dialing system, without prior express consent during the Class Period, between May 1, 2017 and September 30, 2020 (the "Settlement Class").**

Excluded from the Settlement Class are: (1) all persons to whom Defendants and/or their agent(s) sent, or caused to be sent, a text message, directed to a number assigned to a cellular telephone service, utilizing an automatic telephone dialing system, purely to consummate a purchase transaction, such as text messages solely sent to set up time for delivery of a purchase; and (2) Defendants and any parent, subsidiary, affiliate or controlled person of Defendants, as well as the officers, directors, agents, servants or employees of Defendants, or any parent, subsidiary or affiliate of Defendants, and the immediate family members of all such persons.

### B. The Settlement Awards to Settlement Class Members

Pursuant to the Settlement, Defendants have agreed to make available to each Settlement Class member either a Cash Settlement Award of $10 cash for the first allegedly violative text message received from Defendants and $7 for two or more such text message received from Defendants (a "Cash Settlement Award"); or, alternatively, a Voucher Award of $25 voucher for the first such text message and a $15 voucher for the two or more such text message from Defendants (a "Voucher Award"). The Voucher Awards will be redeemable for purchases on the www.ashleyfurniture.com website and subject to additional terms and conditions on the use thereof as described in the Settlement Agreement. *See* Agr. § III.5.

### C. The Notice Program

Pursuant to the Court's Order Granting Preliminary Approval (Dkt. No. 29) and the Settlement Agreement (Agr. § III.9.a.), the Claims Administrator, Kurtzman Carson Consultants LLC ("KCC"), timely provided Notice to the Settlement Class Members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the action, the terms of the Settlement, the projected amount of Class Counsel's Attorneys' Fees and Expenses application, and their rights and deadlines to opt-out of the Settlement Class, object to the Settlement, or to submit a Claim Form for the available Settlement compensation in the form of either a Cash Settlement Award or Voucher Award. *See* Declaration of Abbas Kazerounian on behalf of Class Counsel ("Kazerounian Decl.") ¶ 3.

**D. Release of Claims**

In exchange for the Settlement consideration, Plaintiff and all Settlement Class, have agreed to the release as defined in the Agreement. Agr. § III.12.

**E. Class Counsel Fees and Expenses**

Per the Agreement, Class Counsel are entitled to request attorneys' fees and expenses of up to $400,000. Kazerounian Decl. ¶ 18; Agr. § III.14. Conservatively, the requested amount of attorneys' fees after deducting Class Counsel's estimated expenses is equivalent to roughly **only 9.42%** of the estimated minimum amount of cash settlement benefits available to the Settlement Class. *Id*. ¶¶ 23-24. The amount of attorneys' fees and expenses is not disputed by Defendants per the Settlement; and was negotiated at arm's length and the parties reached an agreement on this amount only after agreeing on all other material terms of the Settlement. *Id*. ¶ 5.

## III. ARGUMENT

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. In re U.S. Oil & Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992). The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements

minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. The Settlement is fair, reasonable, adequate, and more than sufficient under Rule 23(e).

### A. Notice was the Best Practicable Under the Circumstances and Was Reasonably Calculated to Inform the Settlement Class of Their Rights

Each facet of the Notice Program was timely and properly accomplished to provide Settlement Class Members with the best notice practicable. In compliance with the Class Action Fairness Act ("CAFA"), on February 7, 2022, KCC caused CAFA Notice Packets to be mailed to the U.S. Attorneys General of each of the 50 states in which Settlement Class Members reside and the District of Colombia; and KCC has received no response to these CAFA Notices. See Declaration of Alex Thomas of KCC ("KCC Decl.") ¶¶ 3-4. On February 15, 2022, KCC received the Class List data from Defendants which identified the Settlement Class Members. *Id.* ¶ 5.

The Notice Program consisted of: (1) E-Mail Notice; (2) a Postcard Notice sent by mail; (3) the Settlement Website; and (4) a toll-free number with interactive voice accessible 24 hours a day, 7 days a week. Agr. § III.9.a; KCC Decl. ¶¶ 6-12. On March 10, 2022, the Claims Administrator caused the Postcard Notice to be printed and mailed to the 176,895 Settlement Class Members for whom mailing addresses were available on the Class List (*Id.* ¶ 6); and caused the E-Mail Notice to be emailed to 229,871 Settlement Class Members for whom an email address was available. *Id.* ¶ 6. On March 10, 2022, KCC also established and published the Settlement Website ([www.furnituretcpasettlement.com](www.furnituretcpasettlement.com)) where the Notice, Claim Form, Settlement

Agreement, and other case-related documents were made available to Settlement Class Members to view and download, and also allowed Settlement Class Members to easily submit a Claim Form online. *Id.* ¶ 10. Subsequently, on March 28, 2022, KCC caused the Postcard Notice to be printed and mailed to 22,635 Settlement Class Members for whom the Email Notice bounced back or was undelivered. *Id.* ¶ 8. Since sending those Postcard Notices, the Claims Administrator has received 2,022 Postcard Notices returned by the U.S. Postal Service as undeliverable (*Id.* ¶ 9), which is a *de minimis* number in comparison to the class size. Overall, the Notice Program successfully achieved 96.83% reach to the Settlement Class. *Id.* ¶ 10.

The Court-approved Notices and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the available Settlement Awards, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also notified Settlement Class members that a final judgment would bind them unless they opted-out of the Settlement and told them where they could get more information (i.e., the Settlement Website and the toll-free number). Further, the Notice described Class Counsel's intention to seek attorneys' fees and expenses for the Class Representative. Hence, Settlement Class members were provided with direct Notice via e-mail, or U.S. mail for those

unsuccessfully delivered by e-mail, and the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).

As of the date of submission of this motion, the Claims Administrator and the parties' counsel have received no objections to the Settlement and only three (3) people chose to opt-out of the Settlement Class. KCC Decl. ¶ 14; Kazerounian Decl. ¶ 17.

### B. <u>The Settlement Should Be Approved as Fair, Reasonable, and Adequate</u>

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal,

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of

discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *See Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors  below shows this Settlement to be eminently fair, reasonable, and adequate.

### 1)  There Was No Fraud or Collusion Behind the Settlement

The contested nature of the proceedings in this action and the settlement reached following mediation demonstrates the absence of fraud or collusion behind the Settlement.  *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").  Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations.  Class Counsel and Defendants engaged in formal mediation and negotiations were arm's-length and extensive with an experienced and well-regarded mediator, Bruce Friedman of JAMS, and the parties continued to negotiate the minor terms of the Settlement Agreement for months after the mediation. Kazerounian Decl. ¶ 5*; Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

### 2)  The Settlement Will Avoid Protracted Litigation

The claims and defenses are complex and recovery by any means other than settlement would likely require additional years of costly litigation. *See United States v.*

*Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."). In contrast, the Settlement here provides immediate and substantial monetary benefits to the Settlement Class without the uncertainty and delay of further litigation. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id.* at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### 3) The Factual Record is Sufficiently Developed to Enable Class Counsel to Make a Well-Reasoned Determination

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly,

only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (MD Fla. 1992).

Here, Class Counsel negotiated the Settlement with the benefit of information received through informal discovery. Kazerounian Decl. ¶ 5. Specifically, Class Counsel reviewed numerous pages of documents and electronic data regarding potential class members and spent considerable time analyzing Defendants' numerous defenses. *Id.* Furthermore, before filing Plaintiff's Motion for Preliminary Approval, Class Counsel also conducted the confirmatory deposition of Defendants' Rule 30(b)(6) representative. Thus, Class Counsel's understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of this action, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis. *Id.* ¶ 15.

### 4) Plaintiff and the Class Still Faced Significant Obstacles

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. 297, 314 (N.D. Ga 1992). Class Counsel believes that Plaintiff had a strong case against Defendants. Kazerounian Decl. ¶ 10. Even so, Class Counsel are mindful that Defendants advanced significant defenses, including case dispositive defenses as to merits and class certification that would have been required to overcome in the absence of the Settlement. *Id.* The Settlement provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain and delayed, especially given Defendants' ability and willingness to engage in vigorous defense of

the case. *Id.* ¶ 10. The Settlement is also extremely favorable in light of more recent case law, issued after the parties' mediation and settlement, by the Supreme Court of the United States' (SCOTUS) in *Duguid v. Facebook Inc.*, 141 S.Ct. 1163 (2021), reinterpreting the meaning of an "automatic telephone dialing system," which is a critical element of Plaintiff's claim under 47 U.S.C. § 227(b)(1)(A)(iii). *Id.* ¶ 22.

Given the myriad risks attending these claims, as well as the uncertainty, substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial…It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

> ### 5) The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990). "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* Pursuant to the TCPA, each injured Settlement Class member could have received

$500.00 for each violative message if awarded a successful verdict at trial, but such a result was uncertain and would have been deferred by years of costly litigation.

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them, in light of the information received from Defendants and Class Counsel's experience in litigating similar TCPA class actions. Kazerounian Decl. ¶ 5. Here, each Settlement Class Member who submits a claim will receive settlement compensation in the form of a Cash Settlement Payment of $10 for a Settlement Class Member who received one eligible text or $17 for a Settlement Class Member who received multiple eligible texts; or alternatively, a Voucher Award of either $25 for one eligible text or $40 for a Settlement Class Member who received multiple eligible texts (*Id.* ¶ 21; Agr. § III.5 – 7), which is well within the range of the typical settlement amount for a TCPA claim. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member.); *Wilkins v. HSBC Bank Nevada, N.A.,* 2015 U.S. Dist. LEXIS 23869, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member).

Accordingly, This Settlement provides an extremely fair and reasonable recovery to Settlement Class members, particularly when considering Defendants' defenses, as well as the challenging, unpredictable path of protracted litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts absent the Settlement. Kazerounian Decl. ¶¶ 12, 22.

### 6) The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the Settlement and strongly believe the Settlement is the best vehicle for Settlement Class Members to receive beneficial relief in a prompt and efficient manner. Kazerounian Decl. ¶ 16. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

Also, the Settlement has been well-received by the Settlement Class as there has been no opposition and not a single objection has been filed to date. Kazerounian Decl. ¶ 17; KCC Decl. ¶ 14. This is another indication that the Settlement Class is clearly satisfied with the Settlement. Hypothetically, even if there had been some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

As recognized by the Court in the Order Granting Preliminary Approval (Dkt. No. 29), all of the factors under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure are satisfied in this Settlement.

## A. Numerosity is Satisfied

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 417,989 individuals, and joinder of all such persons' claims would be impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

## B. Commonality is Satisfied

The commonality requirement is readily satisfied. There are multiple questions of law and fact related to Defendants' alleged violations of the TCPA that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011).

## C. Typicality is Satisfied

For similar reasons, Plaintiff's claims based on text messages received without prior express consent are typical of the Settlement Class as they are reasonably coextensive with those of the absent class members as they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Plaintiff, like other members of the class, received a text message without prior express consent, triggering the same alleged violation and injury under the TCPA. Plaintiff and the Settlement Class Members will all similarly benefit from the relief provided through this Settlement. Therefore, the Rule 23(a)(3) typicality requirement is satisfied.

### D. **Plaintiff and Class Counsel Satisfy the Adequacy Requirement**

Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. 310, 314 (2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class because Plaintiff and the absent class members have the same interest in the relief afforded by the Settlement and have no diverging interests. Further, Plaintiff has retained qualified and competent Class Counsel who have extensive experience and expertise and recognition in prosecuting complex class actions, including class actions under the TCPA in particular. Kazerounian Decl. ¶¶ 29-71. Therefore, the adequacy requirement under Rule 23(a)(4) is satisfied.

### E. **Predominance is Satisfied**

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). The Rule 23(b)(3) predominance requirement is readily satisfied because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class

member. The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Resolution of thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Also, with the value of statutory damages of $500 to $1,500 per violation available to each claimant, very few Settlement Class Members would litigate their individual claim because the amount of available statutory damages per Class Member is relatively small, making class treatment superior. *See Barrett v. Wesley Fin. Grp., LLC*, No. 13cv554-LAB-KSC, 2015 U.S. Dist. LEXIS 189410, at *19-20 (S.D. Cal. Mar. 30, 2015)*.

Therefore, based on the foregoing, the Settlement Class should be finally certified by this Court and the Settlement should be given final approval.

## V.     APPLICATION FOR ATTORNEY'S FEES AND EXPENSES

Pursuant to the Settlement Agreement, per the Notice provided to the Settlement Class, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees not to exceed $400,000. *See* Agr., § III.14; Kazerounian Decl. ¶ 18.

### A.     Class Counsel is Entitled to Fees from the Settlement Benefits Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a

plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Sunbeam*, 176 F. Supp. 2d at 1333. The common benefit doctrine is applied the same way to claims made settlements. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015) ("properly understood a claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant; indeed, the two types of settlements are fully synonymous.") (internal citations omitted).

In the Eleventh Circuit, class counsel are awarded a percentage of the funds made available through a settlement. *See Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175, at *15 (M.D. Fla. Apr. 23, 2020) (noting that the percentage of the fund analysis applies to claims made settlements and that the "percentage applies to the total fund created, even where the actual payout following the claims process is lower."); *Marty v. Anheuser-Busch Cos., LLC*, No. 13-cv-23656-JJO, 2015 U.S. Dist. LEXIS 144290, at *5 (S.D. Fla. Oct. 22, 2015) (same). In *Camden I* – the controlling authority regarding attorneys' fees– the Eleventh

Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (noting that in a claims made situation, the attorneys' fees in a class action are determined based upon the total fund, not just the actual payout to the class); *Carter v. Forjas*, 701 F. App'x 759, 766-67 (11th Cir. 2017).

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the

Clients; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) nature and the length of the professional relationship with the clients; and (12) fee awards in similar cases. *See Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As discussed below, here consideration of the *Camden I* factors supports Class Counsel's requested fee award.

### 1) The Claims Against Defendants Required Substantial Time and Labor.

Prosecuting and settling this action demanded considerable time and labor on a contingency fee basis, making this fee request reasonable. Kazerounian Decl. ¶¶19-20. Class Counsel devoted substantial time to developing and investigating the legal claims at issue against Defendants as well as analyzing Defendants' contended defenses. *Id.* Time and resources were also dedicated to informal and confirmatory discovery, including review of numerous pages of documents and electronic data produced by Defendants. *Id.* The parties' mediation session required substantial

preparation and document review. Afterwards, significant time was devoted to negotiating and drafting of the Settlement Agreement, the preliminary approval process, and all actions required thereafter pursuant to the Order Granting Preliminary Approval. Kazerounian Decl. ¶¶ 19-20.

Class Counsel's work to secure the Settlement resulted in the settlement compensation for the Settlement Class.   Each of the above-described efforts was essential to achieving the Settlement presently before the Court. Kazerounian Decl. ¶ 20. Each of the above-described efforts by Class Counsel was essential to achieving the Settlement before the Court.   Accordingly, the time and resources devoted to this Action readily justify Class Counsel's requested fee award.

### 2) The Issues Involved Were Novel and Difficult and Required the Skill of Experienced Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities."  *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). For example, a court in 2015 assumed an "average TCPA case carries a 43% chance of success," *Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015).

As demonstrated in Plaintiff's motion for preliminary approval and herein, the Settlement conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. The work of Plaintiff's counsel required the acquisition and analysis of a significant amount of factual and legal information in order to negotiate and secure this favorable Settlement.   In any given case, the skill of legal

counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Class Counsel's litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification and navigating case dispositive merits issues. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. Kazerounian Decl. ¶ 14.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendants were represented by extremely capable counsel who were worthy adversaries. *Id.*; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3) Class Counsel Achieved a Successful Result.

Rather than facing years of costly and uncertain litigation, each Settlement Class Member is entitled to claim a Cash Settlement Award in the amount of $10 for 1 text from Defendants or a total of $17 for 2 or more texts, or alternatively, a Voucher Award in the amount of $25 for 1 text from Defendants or a total of $40 for 2 or more texts from Defendants, depending on the selection of the Settlement Class Member. Kazerounian Decl. ¶ 21. Thus, taking into consideration the size of the Settlement Class, this settlement compares favorably to other TCPA class action settlements. *See e.g.*, *Defranks v. Nastygal.com USA, Inc.,* No. 1:19-cv-23028-DPG (S.D. Fla Sept. 4,

2020) (TCPA Class action settlement granted final approval with similar tiered cash awards of $35 or voucher awards of $45 for a smaller class of approximately 115,000 class members); *see also*, *Knutson v. Schwan's Home Serv.*, No. 3:12-cv-00964-GPC-DHB, 2014 U.S. Dist. LEXIS 99637, at *12 (S.D. Cal. July 14, 2014) (noting final approval in of a TCPA class action settlement); *Wojcik v. Buffalo Bills, Inc.*, 3:12-cv-2414-SDM, ECF No. 73 (M.D. Fla. April 17, 2014).

### 4) The Claims Presented Serious Risk.

Given the significant litigation risks Class Counsel faced, including recent case law from SCOTUS, the Settlement is particularly beneficial to the Settlement Class. Kazerounian Decl. ¶ 22. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988). The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish class-wide liability and damages at trial; and (ii) the final judgment was affirmed on appeal. Class Counsel appropriately

determined that the Settlement is an extremely fair and reasonable recovery for the Settlement Class, outweighs the risks of continued litigation, and is a fair and reasonable recovery for the in light of Defendants' alleged defenses, the challenging and unpredictable path of continued or protracted litigation that Plaintiff and all Settlement Class members would face absent a settlement. Kazerounian Decl. ¶ 12.

Prosecuting the Action was risky from the outset. Defendants raised substantial and potentially meritorious defenses and were confident in their opposition to Plaintiff's claims, as well as the challenging and unpredictable path of litigation Plaintiff and the Class would have faced absent the Settlement. Kazerounian Decl. ¶ 22. Accordingly, the Settlement avoids substantial risk to Plaintiff in contentious litigation regarding the merits and the benefits obtained for the Settlement Class are substantial, particularly given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. *Id*. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class's successful prosecution of these claims.

### 5) Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.

In undertaking prosecution of this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Kazerounian Decl. ¶ 28. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548). The progress of the case to date shows the

inherent risk faced by Class Counsel in accepting and prosecuting the action on a contingency fee basis. Despite Class Counsel's effort in litigating this case, Class Counsel remain completely uncompensated for their time invested in the Action, in addition to the expenses advanced, and other work Class Counsel was precluded from in the time spent pursuing this matter. *Id*. Public policy concerns – *e.g.*, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. *Id*.

### 6) The Requested Fee Comports with Fees Awarded in Similar Cases.

Counsel's requested fee award not to exceed $400,000.00, or only approximately 9.42% of the cash awards made available to the Settlement Class, is far below, and well within, the range of fees typically awarded in similar cases. In fact, numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is well within the range of reason under the factors listed by the *Camden I*. *See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. No. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide— roughly one-third.") (citing circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's fee request also falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). Also, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *See Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Moreover, Class Counsel's fee request is also reasonable as it falls below and well within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund).

Therefore, Class Counsel's requested award of attorneys' fees and expenses is well below the cases cited, is appropriate and should be awarded by this Court.

## VI. CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval to the Settlement and enter an Order similar to the proposed order attached as "Exhibit D" to the Settlement Agreement; (2) finally certify the Settlement Class for settlement purposes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiff as the Class Representative; (4) appoint Plaintiff's Counsel as Class Counsel; (5) award Class Counsel requested attorneys' fees and expenses in the aggregate amount of $400,000; and (6) enter Final Judgment dismissing the Action with prejudice.

### Local Rule 3.01(g) Certification

Plaintiff has conferred with Defendants. This motion is unopposed by Defendants, and the parties agree on the resolution of this motion in its entirety.

Respectfully submitted,

Date: May 6, 2022          By:   _s/  Abbas Kazerounian_____
                           Abbas Kazerounian (*pro hac vice*)
                           ak@kazlg.com
                           Mona Amini (*pro hac vice*)
                           mona@kazlg.com
                           **KAZEROUNI LAW GROUP, APC**
                           245 Fischer Avenue, Unit D1
                           Costa Mesa, CA 92626
                           Telephone: (800) 400-6808
                           Facsimile:   (800) 520-5523

Kevin Cole (*pro hac vice*)
kevin@kjclawgroup.com
**KJC LAW GROUP, A.P.C**

9701 Wilshire Blvd, Ste 1000,
Beverly Hills, CA 90212-2010
Telephone: (310) 861-7797
Facsimile:  (818) 994-9200

Matthew A. Goldberger
Florida Bar No. 119897
matthew@goldbergerfirm.com
**MATTHEW A. GOLDBERGER, P.A.**

1555 Palm Beach Lakes Blvd., Suite 1400
West Palm Beach, FL 33401
Telephone: (561) 659-8337
Facsimile:  (561) 284-8938

*Attorneys for Plaintiff and the Settlement Class*

# <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 6, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

> By: s/ *Mona Amini*
> Mona Amini (*pro hac vice*)
> mona@kazlg.com
> **KAZEROUNI LAW GROUP, APC**
> 245 Fischer Avenue, Unit D1
> Costa Mesa, CA 92626
> Telephone: (800) 400-6808
> Facsimile: (800) 520-5523